## LONG *v.* BIBBLER.

1. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MISTAKE—PROOF.
   One alleging mistake in a written contract should establish the fact beyond cavil, and especially so where he had the contract prepared by his own scrivener.

2. SAME—VENDOR AND PURCHASER—MISTAKE—EVIDENCE — SUFFICIENCY.
   In a suit by the vendor for the reformation of a contract for the sale of a farm, on the ground of mistake, evidence that all the parties were present when the scrivener, who was selected by plaintiff, drew the contract, that they stated to him the terms of payment, that after it was prepared it was read over to them and they were satisfied with it and signed it, *held*, to negative plaintiff's claim, after a lapse of nearly 10 years, that there was a mistake in the terms of payment.

3. SAME—LENGTH OF TIME REQUIRED TO MATURE CONTRACT INSUFFICIENT GROUNDS FOR REFORMATION.
   That 60 years would elapse before the contract would mature under the terms therein provided, and that the

parties failed to realize that fact, *held*, insufficient to authorize the court to reform it, since they had a right to make such a contract.

Appeal from Kent; Dunham (Major L.), J.    Submitted October 19, 1923.    (Docket No. 108.)    Decided December 19, 1923.

Bill by Wellington Long against Otis Bibbler and another for the reformation of a land contract on the ground of mistake.    From a decree for plaintiff, defendants appeal.    Reversed, and bill dismissed.

*Smedley, Linsey & Shivel*, for plaintiff.

*Edgar A. Maher*, for defendants.

McDONALD, J.    This bill was filed to secure the reformation of a land contract on the ground of mutual mistake.    On the 15th day of December, 1913, the parties entered into a written contract for the sale and purchase of a certain farm owned by the plaintiff in the township of Vergennes, Kent county, Michigan. The purchase price was $6,425 and the terms of payment as expressed in the contract were as follows:

"Four hundred twenty-five dollars upon the signing and delivery of these presents, $50 December 15, 1914, and $50, or more, upon the 15th day of December in each and every year thereafter till the principal sum shall be reduced to $3,000, at which time, the balance unpaid shall become due and payable, and it is further agreed that if this contract shall be sold or transferred by the said second parties, they shall at that time make a payment of $1,000 upon the principal sum still remaining unpaid on the within contract."

It is the claim of the plaintiff that the parties agreed upon the terms of payment prior to the drafting of the contract, and that it was then agreed that the entire purchase price and interest should become due and payable ten years from date; that they then went

to the Lowell State Bank for the purpose of having Mr. Nash draft the contract; that in doing so he failed to include the agreement as to the payment of the entire principal sum in ten years, and that, therefore, the writing does not express the true agreement of the parties, who both intended that the purchase price should be entirely paid on or before ten years from the date of the contract; that, though the contract was read over to him before he signed it, he did not discover the mistake; that it was drawn in duplicate; that he left his contract with the bank and did not have occasion to examine it for nine years, when he discovered the mistake; that he immediately took the matter up with the defendant Bibbler, who agreed to correct it but did not do so, and it became necessary for the plaintiff to file this bill.

The defendants claim that there was no mistake, and that if there were it was not mutual but unilateral, and that the plaintiff is not entitled to a reformation. The circuit judge reformed the contract in the manner requested by the plaintiff. From the decree entered the defendants have appealed.

"The evidence of mistake in a written contract, on which the court should act in giving relief, ought to be so clear as to establish the fact beyond cavil. Especially should this be the case when the party setting up the mistake has had the contract prepared by his own professional advisor and apparently with care and deliberation." *Vary* v. *Shea,* 36 Mich. 388.

In the instant case the plaintiff selected Mr. Nash of the Lowell State Bank to draft the contract. The parties were all present when it was prepared. They stated the terms of payment. He drafted the contract after listening to their statement; it was then read over to them; they signed it and now, after approximately ten years have elapsed, one of the parties is asking to have it reformed on the ground of mistake. In these circumstances the evidence of mis-

take "ought to be so clear as to establish the fact beyond cavil." The only witnesses who testify to the preliminary agreement as to the terms of payment are the plaintiff and the defendant Otis Bibbler, though Mrs. Bibbler was present at the bank and corroborates her husband as to what terms were given to the scrivener. The testimony of the plaintiff and defendant Bibbler is in direct conflict. Both in some respects are contradicted by other witnesses. We think, however, that there are some significant facts attending the drafting of the contract which strongly tend to support the claim of the defendants that the writing expressed the true agreement of the parties. Mr. Nash, who prepared the contract, knew nothing about the agreement until they came to his bank and stated its terms. He evidently wrote it in accordance with the information that they gave him; he then read it aloud to them. This is what he read:

"That said parties of the second part agree to purchase said premises, and that the purchase money, being $6,425, shall be paid to the said party of the first part, his representatives and assigns, by the said parties of the second part as follows: $425 on the signing and delivery of these presents, $50 December 15th, 1914, and $50 or more upon the 15th day of December in each and every year thereafter till principal sum shall be reduced to $3,000, at which time balance unpaid shall become due and payable."

The above statement, that after the payment of $3,000 the balance of the purchase price should become due and payable, is inconsistent with plaintiff's testimony that the entire principal sum should be paid within ten years; it negatives the claim that the agreement was directly contrary to that expressed in the writing. It can hardly be said that the plaintiff did not understand what was read to him, for he testifies that nine years later, when he first had occasion to read the contract, he at once discovered the error.

No reason appears why he should not have understood the plain terms of the contract as it was read to him. The scrivener made no mistake; he either deliberately wrote into the contract a whole clause directly opposite to what the parties told him, or he wrote it in accordance with the information they gave as to the terms of payment. We think the fact that the contract was drawn in the presence of all the parties after they had stated the terms of payment, and that it was read over to them before it was signed, and both were satisfied with it, is strong evidence that it expressed their true agreement. In face of these facts the disputed and unsatisfactory testimony of the plaintiff is not sufficient to establish beyond cavil the fact of mutual mistake. In considering the plaintiff's testimony we have not overlooked the fact that it is supported in some degree by that of his attorney, who testifies to an admission made to him at his office by the defendant Bibbler. There is no question as to this attorney's reliability, but we think the alleged admission should be considered in connection with the time and place and circumstances under which it is said to have been made.

In support of their argument as to the real agreement counsel for the plaintiff point out that the contract as drawn is unjust and unconscionable. They say in their brief that if defendants were only required to pay $50 a year on the principal, 60 years would elapse before the contract would mature; that at that time all of the parties would be dead, and that no sane man would understandingly make such a contract. Any discussion of this question should be prefaced with the statement that in this case there is no claim of fraud or misrepresentation. The plaintiff knew the defendant's financial circumstances; he had no means from which to make his payments, except from the proceeds of the farm, which was not very productive. If he were to meet the payments,

pay taxes and keep up the property, a long term contract with small payments was a necessity. The testimony places the rental value of the farm at $200 or $300 a year. The plaintiff receives $410 a year, the amount varying as payments are made on the principal. This is a larger income from the property than he would have received if he had rented it or worked it himself. Furthermore, he sold this farm to the defendant for $6,425. The supervisor of the township testifies that it is worth but $5,000. All things considered, it would seem that he did not make such a bad bargain as the long term of the contract would indicate. He had no family and desired to get away from the farm and live in Lowell. Considering his circumstances as well as those of the defendants, it would appear that the contract as drawn was a reasonable one for all of them at that time. We have an impression, gained from our examination of the record, that when the contract was executed none of the parties realized that if the defendants did not pay more than $50 a year on the principal, 60 years would elapse before it matured; but that fact furnishes no excuse for reforming it. They had a right to make such a contract. We think they did make it as the defendants claim. We have in mind the presumption that attaches to the conclusions of the circuit judge, who has the superior advantage of observing the witnesses; but we have carefully examined all of the evidence and are not convinced that there was a mutual mistake in the making of the contract in question.

The decree of the circuit court is reversed, with costs to the defendants. A decree dismissing plaintiff's bill may be entered.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.