MOSS v. VAN WAGNEN.

1. REFORMATION OF INSTRUMENTS—PAROL EVIDENCE SUFFICIENT.
Parol evidence is sufficient to warrant the reformation of a written instrument.

2. SAME—EVIDENCE OF MUTUAL MISTAKE SHOULD BE CONVINCING.
When it is sought to reform an instrument on the ground of mutual mistake, the testimony should convince the court that it should be reformed in order to carry out the agreement of the parties.

3. HUSBAND AND WIFE—RELEASE OF HUSBAND'S DOWER RIGHTS—CONSIDERATION.
Where wife sold land in Illinois and took back mortgage for part of purchase price, husband's release of his dower rights in said land was sufficient consideration moving to her for insertion of his name as one of mortgagees.

4. REFORMATION OF INSTRUMENTS—MORTGAGES—MUTUAL MISTAKE—SUFFICIENCY OF EVIDENCE.
Where wife sold land owned by her in Illinois, in which her husband had inchoate right of dower, and took back purchase money mortgage in both of their names, in order to warrant reformation of said mortgage by eliminating husband's name, court must find as fact that it was inserted by inadvertence and because of mutual mistake on part of both, and in absence of competent evidence on which to base such finding, reformation was properly denied.

5. Witnesses—Evidence—Estates of Decedents—Reformation of Instruments—Matters Equally Within Knowledge of Deceased.

> In suit by wife against administrator of deceased husband's estate to reform mortgage in which both husband and wife were named as mortgagees, by eliminating husband's name therefrom, testimony of wife and nephew as to conversations with deceased relative thereto was properly excluded under 3 Comp. Laws 1915, § 12553.

6. Reformation of Instruments—Contracts—Mutual Mistake.

> In suit by wife against administrator of deceased husband's estate to reform contract between husband and wife releasing interest of each in other's real estate by including therein release by husband of his interest in mortgage on wife's land in Illinois in which his name appears as one of mortgagees, reformation was properly denied in absence of proof that said release was omitted from said contract by mutual mistake of parties, especially in view of fact that said relief was not sought in original bill, and that more than five years had elapsed from time contract sought to be reformed was executed.

Appeal from Tuscola; Smith (Henry H.), J. Submitted October 10, 1929. (Docket No. 48, Calendar No. 34,510.) Decided January 24, 1930.

Bill by Jane G. Moss against Henry Van Wagnen, administrator of the estate of Barnard A. Moss, deceased, to reform a contract. From decree dismissing bill, plaintiff appeals. Affirmed.

*Otto & Holland,* for plaintiff.

*Roland O. Kern,* for defendant.

Sharpe, J. Barnard A. Moss and Jane G. Moss were married and lived together as husband and wife for upwards of 20 years, until his death in December, 1927. He had several children by a former wife. She had none. They lived for a time upon a

small farm owned by him in Tuscola county, and then moved to the nearby village of Millington, occupying a house owned by the wife until his death. He was a civil war veteran, and received a pension during these years. In January, 1920, George M. Wells, a brother of the plaintiff, presented her with the title to a tract of land of considerable value in the State of Illinois. In December of that year, a contract was entered into by "Jane G. Moss and B. A. Moss, her husband" for the sale of this property to John B. Carson for the sum of $38,000. It was provided therein that when $8,000 was paid thereon the vendors should convey the property and accept a mortgage thereon for the balance of $30,000. Such conveyance was made and the mortgage executed on March 1, 1921. This mortgage and the note secured thereby were sent to the plaintiff, and have since been in her possession. Several payments of interest due thereon have been paid to her. Jane G. Moss and B. A. Moss were named as mortgagees and payees therein.

It may be here noted that under the law of the State of Illinois a husband has an inchoate right of dower in any real estate owned by his wife. The scrivener who prepared the contract, deed, and mortgage, testified that it was because of this provision that the husband's name was inserted in these instruments.

On April 18, 1923, Mr. and Mrs. Moss, accompanied by her nephew, who had looked after the Illinois property for her, went to the office of William J. Spears, an attorney at Vassar, where they executed an instrument in writing, prepared by him, in the words and figures following:

"Memorandum of an agreement made and entered into this 18th day of April, A. D. 1923, by and be-

tween Barnard A. Moss of the one part, and Jane G. Moss of the other part, both of Millington, Tuscola county, Michigan.

"Witnesseth as follows:

"Whereas, said parties are husband and wife,

"And whereas, said parties are desirous of settling their property rights and all claims one may have against the other; now therefore for value received it is mutually confessed and agreed that said parties have no account or unsatisfied claims one against the other, and said Barnard A. Moss further disclaims any interest in and to the real estate now owned by said Jane G. Moss and hereby releases to said Jane G. Moss and all interest he may or might have in her said real estate.

"In witness whereof, the parties have set their hands and seals the day and year first above written.

"Barnard A. Moss,
"Party of the one part.
"Jane G. Moss,
"Party of the other part."

At the same time a conveyance of a lot owned by the husband in the village of Millington was made by Mr. and Mrs. Moss to Iwill M. Spears, and by her conveyed to Mrs. Moss. The consideration therefor was stated to be $325.

Mr. Moss died in December, 1927. The defendant, Van Wagnen, was duly appointed administrator of his estate on petition of plaintiff. In July, 1928, plaintiff filed the bill of complaint herein, setting up the several conveyances made of the Illinois property, and praying that these instruments be reformed by "striking therefrom the name Barnard A. Moss and making the plaintiff the sole grantee named in said mortgage and the sole payee of said note," and that she be decreed to be the owner thereof, and that the administrator be required to execute a proper

assignment and release of the same to her. At the conclusion of the proofs, the motion of plaintiff's attorneys to amend the bill by setting up the instrument prepared by Mr. Spears and praying for its reformation by adding thereto the words "and said Barnard A. Moss further disclaims any interest in and to any real estate mortgages or notes owned by said Jane G. Moss, covering Illinois property in which the name of Barnard A. Moss appears" was granted.

The trial court filed an opinion in which he reviewed the evidence submitted and the law governing the reformation of contracts, and concluded that plaintiff was not entitled to the relief sought. From the decree dismissing her bill, she appeals.

Parol evidence is sufficient to warrant the reformation of a written instrument.

"The only test that can be applied to the weight to be given to the proof submitted in civil cases is that of preponderance." *Hiles* v. *First National Bank,* 237 Mich. 278, 282.

When it is sought to reform such an instrument on the ground of mutual mistake, "the testimony should convince the court that the contract should be reformed in order to carry out the agreement of the parties." *Kelly* v. *Israel,* 237 Mich. 526, 529.

"It is elementary that the burden of proof is strongly upon the party asking reformation of a written instrument on the ground of mistake. The proof of mistake must be clear and convincing. * * * The mistake must be mutual. For relief by reformation in equity, it is essential that the error be made by both parties, and that it be admitted by defendant or distinctly proven." *Miles* v. *Shreve,* 179 Mich. 671, 679.

"Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument." *Lee State Bank* v. *McElheny,* 227 Mich. 322, 327.

This is but saying that the proof in such cases— "will be weighed with much care and, when considered with any facts or circumstances tending to show its unreliability, must be such as satisfies the mind and conscience of the court." *Hiles* v. *First National Bank, supra.*

With these considerations in mind, let us consider the proof submitted on which the right to reformation of these instruments is based.

1. *Mortgage.* In the deal culminating in the sale of the property in Illinois to John B. Carson, plaintiff was represented by her nephew, Richard E. Wills. He was a witness to the signatures of Mr. and Mrs. Moss and took their acknowledgment of both the contract and the deed. The correspondence by which the sale was made, and the contract, deed, and mortgage executed, was had by him, although the mortgage, after it had been recorded, was sent direct to Mrs. Moss. The mortgage and note were executed on March 1, 1921, and have been in plaintiff's possession since about that time. It is conceded that a husband has an inchoate right of dower in lands owned by his wife in the State of Illinois. His release of that right was a sufficient consideration moving to her for the insertion of his name as a mortgagee in the mortgage. *Randall* v. *Randall,* 37 Mich. 563, 572; 30 C. J. p. 690, note. She knew that both her husband and herself were named as mortgagees and payees from the time the mortgage and note were delivered to her in 1921 un-

til his death in 1927, and yet made no effort to se-
cure reformation during that time. To reform them
by eliminating the name of the husband therein, we
must find as a fact that it was inserted by inadvert-
ence and because of a mutual mistake on the part of
both. The testimony of the widow and of Wills as to
conversations with the deceased relative thereto was
properly excluded.        3 Comp. Laws 1915, § 12553.
There was no competent evidence on which to base
the reformation prayed for.

2. *Contract.* . This instrument was executed on
April 18, 1923. The trial was had in December, 1928,
more than five years thereafter. Mr. Spears testi-
fied:

"My recollection is, Mr. Moss—Mr. Moss said to
me that they were settling up their money matters
between them and had a settlement and agreement
and that the agreement was that the property he
had was to go to his heirs, she was not to participate
in what he had and he was going to release her prop-
erty and wouldn't make any claims against her prop-
erty or coming from her people. He wanted his
children to have what he had, and he wouldn't make
any claims on her, and I drew that up for that pur-
pose."

Pursuant thereto, he prepared the agreement and
the conveyances by which his lot was transferred to
her. He was then asked:

"At that time was anything said by Mr. Moss to
you and Jane G. Moss or Ed Wills, about the Illinois
property?"

And answered:

"It was talked. I haven't a very distinct recollec-
tion what was about the Illinois property. It was
mentioned, but what the talk was I can't recall. It
is my custom to prepare papers in duplicate. I am

sure I prepared Exhibit 'D' in duplicate and each party got a duplicate. I am positive that is what happened.''

Mrs. Moss at that time owned other property in the State of Illinois. The provision as to the release by the deceased of any interest in real estate owned by his wife was doubtless inserted to apply thereto. There is no intimation even, in the testimony of Mr. Spears, that anything was said to him about the mortgage and note in question. It is also worthy of note, as stated by the trial judge in his opinion, that these instruments were not at that time taken to Mr. Spears' office. Mr. Wills testified that they had been talked about in the home before that. He was a nephew of the plaintiff, and, as she had no children, was interested in her estate as an heir. The plaintiff testified that Wills was her "man of affairs," and looked after her interest in the property sold to Mr. Carson, and "did all work of this nature" for her. He accompanied her and her husband when they went to the office of Mr. Spears. While the record does not so disclose, this was doubtless at her request. He was a competent business man, and no doubt fully understood the legal effect of the name of the husband appearing in the mortgage and note. And yet, although these instruments were, as he testifies, talked about before they went to Mr. Spears' office to have their property rights adjusted, they were not taken there, nor was any specific statement made to Mr. Spears relative to them.

Under the rule above stated applying to reformation of instruments, it seems clear that under the testimony of Mr. Spears we could not say that the words now sought to be inserted in this contract were omitted therefrom by a mutual mistake of the parties, nor can we say that the testimony of Wills,

even if admissible, would justify such a holding. It must also be borne in mind that reformation of this instrument was not sought in the bill as first filed, but was asked in an amendment thereto, filed several months thereafter, and more than five years after the contract sought to be reformed was executed.

The decree is affirmed, with costs to appellee.

Wiest, C. J., and Butzel, Clark, Potter, North, and Fead, JJ., concurred. McDonald, J., took no part in this decision.